IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| MICHAEL H. SIMMONS, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> JO ANNE B. BARNHART ) <br> COMMISSIONER OF SOCIAL ) <br> SECURITY, ) <br> ) <br> Defendant. ) <br> _____) | CIVIL ACTION NO. 0:04-23249-TLW-BM <br><br> **REPORT AND RECOMMENDATION** |

The Plaintiff filed the complaint in this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner wherein he was denied disability benefits. This case was referred to the undersigned for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), (D.S.C.).

The record reflects that Plaintiff applied for Disability Insurance Benefits (DIB) effective January 21, 2003, alleging disability as of June 28, 2002 due to back pain. ( R.pp. 52, 59, 269). Plaintiff's claim was denied initially and upon reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge (ALJ), which was held on February 5, 2004. (R.pp. 266-289). Following the hearing, the ALJ denied Plaintiff's claim in a decision issued March 22, 2004. (R.pp. 15-24). The Appeals Council denied Plaintiff's request for a review of the ALJ's decision, thereby making the determination of the ALJ the final decision of the Commissioner. (R.pp. 5-7).

The Plaintiff then filed this action in United States District Court. Plaintiff asserts that there is not substantial evidence to support the ALJ's decision, and that the decision should be



reversed and remanded for an award of benefits. The Commissioner contends that the decision to deny benefits is supported by substantial evidence, and that the Plaintiff was properly found not to be disabled.

## Scope of review

Under 42 U.S.C. § 405(g), the Court's scope of review is limited to (1) whether the Commissioner's decision is supported by substantial evidence, and (2) whether the ultimate conclusions reached by the Commissioner are legally correct under controlling law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Richardson v. Califano, 574 F.2d 802, 803 (4th Cir. 1978); Myers v. Califano, 611 F.2d 980, 982-983 (4th Cir. 1980). If the record contains substantial evidence to support the Commissioner's decision, it is the court's duty to affirm the decision. Substantial evidence has been defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. **If there is evidence to justify refusal to direct a verdict were the case before a jury, then there is "substantial evidence."** [emphasis added].

Hays, 907 F.2d at 1456 (citing Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966)). The Court lacks the authority to substitute its own judgment for that of the Commissioner. Laws, 368 F.2d at 642. "[T]he language of [405(g)] precludes a de novo judicial proceeding and requires that the court uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by substantial evidence." Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

## Discussion

A review of the record shows that Plaintiff, who was forty-three (43) years old when he alleges he became disabled, has an eleventh grade education with past relevant work experience



as a waste disposal attendant, banquet set-up server, truck driver, and landscaper. (R.pp. 53, 60, 100-101). In order to be considered "disabled" within the meaning of the Social Security Act, Plaintiff must show that he has an impairment or combination of impairments which prevent him from engaging in all substantial gainful activity for which he is qualified by his age, education, experience and functional capacity, and which has lasted or could reasonably be expected to last for at least twelve (12) consecutive months. After review of the evidence and testimony in the case, the ALJ determined that, although Plaintiff is unable to perform his past relevant work, he nevertheless retained the residual functional capacity to perform sedentary work[1] with certain restrictions, and was therefore not disabled. (R.pp. 23-24).

Plaintiff asserts that in reaching this decision, the ALJ erred by improperly evaluating the opinion of Plaintiff's treating physician, Dr. Gaston Perez, by posing an ambiguous hypothetical question to the vocational expert, by failing to make a proper evaluation of the number of jobs Plaintiff could perform with his RFC, and by improperly assessing Plaintiff's credibility and pain. However, after careful review and consideration of the evidence and arguments presented, the undersigned finds that there is substantial evidence in the record to support the conclusion of the ALJ that Plaintiff was not disabled as that term is defined in the Social Security Act during the relevant time period, and that the decision of the Commissioner should therefore be affirmed.

First, although Plaintiff's medical records confirm a long history of his being diagnosed with back problems and resulting pain, the question before this Court is not whether

---

[1] Sedentary work is defined as lifting no more than 10 pounds at a time and occasionally lifting and carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a) (2005).

3



Plaintiff has or is suffering from this impairment, but whether substantial evidence supports the ALJ's finding that Plaintiff's impairment is not of a disabling severity. See Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) [the mere presence of impairments does not automatically entitle a claimant to disability benefits, there must be a showing of related functional loss]; Trenary v. Bowen, 898 F.2d 1361, 1364 (8th Cir. 1990) [Courts should properly focus not on a claimant's diagnosis, but on the claimant's actual function limitations]. That Plaintiff suffers from degenerative disc disease, a severe impairment, does not by itself mean that he is automatically entitled to disability benefits.

    Plaintiff's main argument for a finding of disability is the fact that a treating physician, Dr. Perez, completed a medical source statement on January 27, 2004, in which he opined that Plaintiff could only lift and/or carry ten pounds occasionally, and less than ten pounds frequently, with significant limitations in his ability to stand, walk or sit in an eight hour work day as well as other limitations. (R.pp. 184-187). However, the ALJ did not accept this opinion, noting that Dr. Perez's own examinations failed to reflect such significant restrictions on Plaintiff's physical capacity, that his course of treatment for the Plaintiff was not consistent with what one would expect if the Plaintiff were truly disabled, and that Dr. Perez's opinion placed heavy reliance on the subjective report of symptoms and limitations provided by the Plaintiff, rather than on objective evidence. (R.pp. 19-20). The ALJ further found that Dr. Perez's opinion was contrary to the other medical evidence in the record, including the records of specialists who treated Plaintiff for his condition. Id.[2]  20 C.F.R. § 404.1527(d)(5) (2001) [opinion of a specialist about medical issues related to his or her area of specialty are entitled to more weight than the opinion of a physician who is not a specialist].

---

[2]Dr. Perez was Plaintiff's primary care physician. (R.p. 17).

4



The undersigned does not find any reversible error in the ALJ's treatment and consideration of Dr. Perez's opinion and medical records. The record reflects that Dr. Randolph Bishop performed a lumbar fusion on the Plaintiff around March of 2001, which went well. (R.pp. 114-116). Dr. Perez's notes through September 2001 reflect that Plaintiff was experiencing only a small amount of back pain, with no motor, sensory, or reflex deficits. (R.pp. 214-215, 220, 229). Dr. Perez prescribed Plaintiff Oxycontin for pain on June 11, 2002, and referred him to Dr. Charles Nivens, a spine specialist, for treatment. (R.p. 212). Dr. Nivens saw Plaintiff on June 19, 2002, and on physical examination found that Plaintiff had 5/5 motor strength, intact senses, symmetrical deep tendon reflexes, positive straight leg raising test bilaterally, a negative clonus test,[3] and a negative Patrick's test.[4] An MRI confirmed degenerative disc disease with a small disc bulge of L3-4 and a large broad-based disc bulge at L4-5, as well as mild multifactorial spinal stenosis at L4-5. Dr. Nivens gave Plaintiff an epidural steroid injection, but did not note any work related limitations or restrictions. (R.pp. 180-181).

On June 27, 2002, the day before Plaintiff alleges his disability began, Dr. Perez found no gross focal changes in Plaintiff's motor strength, sensory exam or reflexes. (R.p. 210). On July 30, 2002 (two days *after* Plaintiff alleges his disability began), an examination performed by Dr. Nivens again found 5/5 motor strength and intact senses with 2+ deep tendon reflexes. Dr. Nivens noted that Plaintiff's pain was better, but that he complained that working increased his symptoms.

---

[3]Clonus tests check for spasmodic alternation of muscular contractions between antagonistic muscle groups caused by hyperactive stretch reflex from an upper motor neuron lesion. Usually, sustained pressure or stretch of one of the muscles inhibits the reflex. See Taber's Cyclopedic Medical Dictionary (Taber's), (20th Ed. 2005), available on Stat!Ref Library CD-ROM (Second Qtr. 2005).

[4]Patrick's test is a test for arthritis of the hip. The test results are positive if depression of the knee produces pain. See Dorland's Illustrated Medical Dictionary, (27th ed. 1988), p. 1688.



(R.pp. 175-176). Dr. Nivens continued to treat Plaintiff with epidural steroid injections. (R.pp. 169, 175).

Plaintiff was evaluated by Dr. John Mahan, an orthopaedic specialist, on August 7, 2002, who reported that Plaintiff ambulated around the room without difficulty, had 5/5 motor strength in his lower extremities, and no sensory deficits. An MRI confirmed degenerative disc disease, although Dr. Mahan reported that Plaintiff's symptoms were "somewhat mild in terms of his MRI" and that it was unlikely Plaintiff would respond to any type of surgery. He recommended that Plaintiff continue with physical therapy and conditioning. (R.p. 132). Physical therapy notes from October 2002 show that Plaintiff was doing "okay" with a low to mid range of pain on a scale of 0-10. (R.pp. 160-165).

Plaintiff went back to see Dr. Bishop on November 18, 2002 at the recommendation of Dr. Perez. Plaintiff complained of pain made worse with activities, but also told Dr. Bishop that he was "still currently working....".[5] Dr. Bishop noted that Plaintiff exhibited a lot of mechanical back pain when getting up and down from a chair, although a musculoskeletal examination found that Plaintiff had 5/5 muscle strength with a normal gait and stable station.[6] Dr. Bishop recommended that Plaintiff undergo a diskography from L3-S1, with Plaintiff to call when he desired to schedule this procedure. (R.pp. 110-111). However, it is unclear whether Plaintiff ever followed through with this recommendation, as the next treatment notes are from Dr. Nivens beginning in January 2003. Dr. Nivens continued to see Plaintiff through July 2003 with examinations consistently reflecting that Plaintiff had 5/5 motor strength, intact sensory exams, negative straight leg raising tests, and negative

---

[5] This was four months after his alleged disability onset date.

[6] Dr. Bishop had previously noted in his medical reports that Plaintiff's "pain at times seems to be out of proportion to his pathology." (R.p. 112).



clonus responses. Plaintiff was also continuing with physical therapy during this time period. (R.pp. 139, 146-150, 159). Plaintiff saw Dr. Perez on July 3, 2003, who also found no cranial, motor sensory or reflex deficits. He started Plaintiff on Neurontin for pain. (R.p. 190).

On August 6, 2003, Plaintiff went to see Dr. James DeTorre, an orthopaedic surgeon, for a "self-referred" second opinion. Dr. DeTorre noted that Plaintiff had long standing complaints of back pain for which he had received "extensive conservative supportive treatment" from Dr. Nivens. See Robinson v. Sullivan, 956 F.2d 836, 840 (8th Cir. 1992) [holding that conservative treatment is not consistent with allegations of disability]. Dr. DeTorre noted that Plaintiff had "no demonstrable operative pathology under any assessment. Therefore, it is absolutely impossible to understand why this man has presented to my office as I do not do conservative treatment nor do I do surgical back care." Dr. DeTorre did perform a physical examination, in which he noted that Plaintiff was in no apparent distress, walked without a limp or list, with an unremarkable upper extremity examination and a lower extremity examination which revealed symmetrical biceps, patella and Achilles tendon reflexes. Dr. DeTorre opined that Plaintiff was probably chemically dependent on Oxycontin. (R.p. 129).

Plaintiff then returned to Dr. Mahan, with whom he discussed treatment options. Dr. Mahan noted in his report that Plaintiff was "very leery to proceed with any surgical treatment since a good outcome cannot be guaranteed." Dr. Mahan advised Plaintiff that proceeding with surgery was predicated solely on symptom severity, and that if Plaintiff could put up with his current symptoms then there was no necessity to proceed with surgery. (R.p. 130). Plaintiff thereafter returned to Dr. Perez on September 8, 2003, who again noted no motor, sensory or reflex deficits. (R.p. 188).

7



A physical examination performed by Dr. Nivens on April 6, 2004 was unremarkable with no focal deficits noted, while an examination on July 12, 2004 revealed 5/5 motor strength, intact sensory examination, antalgic gait, and no atrophy. (R.pp. 245-246, 251-252). Another examination performed by Dr. Nivens on August 30, 2004 yielded similar findings. (R.pp. 238-239). Plaintiff was continuing to receive lumbar epidural steroid injections from Dr. Nivens during this time period. (R.pp. 242, 248-255).

Finally, Plaintiff's medical record contains a physical residual functional capacity assessment completed by state agency physician Dr. George Keller on August 14, 2003, who found after review of Plaintiff's medical records that he retained the RFC for light work[7]; that he could stand and/or walk with normal breaks for a total of about six hours in an eight hour work day; sit with normal breaks for a total of about six hours in an eight hour work day; with limited foot control for pushing and pulling with his right lower extremity. Dr. Keller further found that Plaintiff could occasionally climb ramps and stairs; balance, stoop, kneel, crouch and crawl; that he had no manipulative, visual, communicative or environmental limitations; but that he could never climb ladders, ropes or scaffolds. (R.pp. 103-106).

After review of these medical records and consideration of Plaintiff's subjective testimony; see (R.pp. 18-19); the ALJ found and concluded that Plaintiff retained the residual function capacity to perform sedentary work with the following additional limitations: occasional stooping, kneeling, and crawling and no climbing, exposure to heights, operating moving machinery,

---

[7]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b) (2005).



or operating foot controls. Plaintiff would also require a sit/stand option and work which involved only simple instructions. The ALJ stated that he was giving Plaintiff the benefit of the doubt by limiting him to sedentary work, and that he was also limiting him to simple work without exposure to heights or moving machinery due to Plaintiff's representations that his pain medication made him sleepy and affected his concentration. (R.p. 21). The records and opinions of Plaintiff's treating and examining physicians discussed hereinabove provide substantial evidence to support the residual functional capacity found by the ALJ; see Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1993) [ALJ may properly give significant weight to an assessment of an examining physician]; Richardson v. Perales, 402 U.S. 389, 408 (1971) [assessment of examining, non-treating physicians may constitute substantial evidence in support of a finding of non-disability]; as does the opinion of the state agency physician. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986) [opinion of a non-examining physician can constitute substantial evidence to support the decision of the Commissioner].

   Addressing Plaintiff's arguments for disability, the undersigned does not find that the ALJ was required to accept Dr. Perez's opinion of disability in light of the contrary medical evidence, which included not only Dr. Perez's own treatment notes, but the records of other treating physicians who were specialists in their fields. See Craig v. Chater, 76 F.3d 585, 589-590 (4th Cir. 1996) [rejection of treating physician's opinion of disability justified where the treating physician's opinion was inconsistent with substantial evidence of record]; Hays, 907 F.2d at 1456 [it is the responsibility of the ALJ to weigh the evidence and resolve conflicts in that evidence]; Castellano v. Secretary of Health & Human Servs., 26 F.3d 1027, 1029 (10th Cir. 1994) [physician opinion that a claimant is totally disabled "is not dispositive because final responsibility



for determining the ultimate issue of disability is reserved to the [Commissioner]"]; 20 C.F.R. §§ 404.1527(e)(2) and 416.927(e)(2). Plaintiff's argument that the ALJ failed to properly evaluate Dr. Perez's opinion as required by the Social Security regulations is without merit. The ALJ's opinion reflects that he thoroughly reviewed the medical evidence before making his findings and conclusions. See (R.pp. 17-21).

Plaintiff's argument that the ALJ failed to properly consider and evaluate his subjective testimony is also without merit. The ALJ discussed Plaintiff's subjective testimony and noted that the extent of pain and limitations as testified to by the Plaintiff was inconsistent with an activities questionnaire Plaintiff completed in September 2003, on which he indicated he could perform a greater level of activity than testified to at the hearing. The ALJ also noted inconsistencies in Plaintiff's testimony with respect to the relative success of his pain medication, as well as Plaintiff's claim that his doctors advised him not to have surgery. (R.pp. 18-19). See also pp. 89-98, 133-183). The ALJ then carefully compared and considered this subjective testimony in conjunction with the objective medical evidence of record in making his findings. The undersigned can find no reversible error in the ALJ's treatment of Plaintiff's subjective testimony or in his consideration of this testimony in conjunction with the objective medical evidence of record. See generally, Hays, 907 F.2d at 1456 [it is the responsibility of the ALJ to weigh the evidence and resolve conflicts in that evidence]; Blalock, 483 F.2d at 775 [It is the claimant who bears the burden of proving his disability]; Hunter, 993 F.2d at 35 [ALJ may properly consider inconsistencies between a plaintiff's testimony and the other evidence of record in evaluating the credibility of the plaintiff's subjective complaints]; Jolley v. Weinberger, 537 F.2d 1179, 1181 (4th Cir. 1976) [finding that objective medical evidence, as opposed to the claimant's subjective complaints, supported an inference that



10

he was not disabled]; Mickles v. Shalala, 29 F.3d 918, 925-926 (4th Cir. 1994) [In assessing the credibility of the severity of reported subjective complaints, consideration must be given to the entire record, including the objective and subjective evidence]; see also Cruse v. Bowen, 867 F.2d 1183, 1186 (8th Cir. 1989) ["the mere fact that working may cause pain or discomfort does not mandate a finding of disability"].

Finally, the record reflects that the ALJ obtained vocational expert testimony at the hearing, where the vocational expert was proffered a hypothetical which reflected the residual functional capacity found to exist by the ALJ. (R.pp. 286-288). In response to this hypothetical with a limitation to sedentary work, the ALJ identified two jobs which Plaintiff could perform with his limitations, considering his age and educational background. (R.p. 287). The ALJ's hypothetical was neither ambiguous, nor did the VE identify an insignificant number of jobs which Plaintiff could perform.[8]  While Plaintiff may disagree with the findings of the ALJ, the undersigned has

---

[8]One job identified by the VE had five hundred and forty (540) positions available in South Carolina, one hundred and fifty five thousand (155,000) nationally, while the other one had four hundred and ninety (490) positions available in South Carolina, forty four thousand one hundred (44,100) nationally. Plaintiff's claim that this was not a sufficient number of jobs to support the ALJ's decision is without merit. See Hall v. Bowen, 837 F.2d 272 (6th Cir. 1988)[discussing requirement of identifying a significant number of jobs, and what constitutes a significant number of jobs]; Harmon v. Apfel, 168 F.3d 289, 292 (6th Cir. 1999)["the regulations implementing the Social Security Act clarify this point: 'It does not matter whether . . . [w]ork exists in the immediate area in which you live . . . .'"]; Hicks v. Califano, 600 F.2d 1048, 1051, n.2 (4th Cir. 1979) ["We do not think that the approximately 110 jobs testified to by the Vocational Expert constitute an insignificant number."]; Allen v. Bowen, 816 F.2d 600, 602 (11th Cir. 1987) (174 positions are a significant number); Nix v. Sullivan, 744 F.Supp. 855, 863 (N.D.Ill. 1990) aff'd, 936 F.2d 575 (7th Cir. 1991) [675 jobs are a significant number]; Barker v. Secretary of Health and Human Services, 882 F.2d 1474, 1478-1479 (9th Cir. 1989) [1200 jobs was within the parameters of "significant numbers"]; Jenkins v. Bowen, 861 F.2d 1083, 1087 (8th Cir. 1988) [500 jobs would be a significant number]; Hyatt v. Apfel, No. 97-2225, 1998 WL 480722 at **3 (4th Cir. Aug. 9, 1998) [650 jobs would be significant number]; Campbell v. Barnhart, No. 01-1429, 2002 WL 32595046 at *14 no. 12 (E.D.Va. Aug. 15, 2002), aff'd, 2003 WL 463511 (4th Cir. 2003).

11



previously concluded that these findings are supported by substantial evidence in the record as that term is defined in the applicable caselaw.  Hence, the hypothetical given by the ALJ to the vocational expert was proper, and the undersigned finds no grounds in the ALJ's treatment of the vocational expert's testimony for reversal of the final decision of the Commissioner. Lee v. Sullivan, 945 F.2d 687, 694 (4th Cir. 1991); see also Martinez v. Heckler, 807 F.2d 771, 773 (9th Cir. 1986).

### Conclusion

Substantial evidence is defined as " … evidence which a reasoning mind would accept as sufficient to support a particular conclusion." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984).  As previously noted, if the record contains substantial evidence to support the decision (i.e., if there is sufficient evidence to justify a refusal to direct a verdict were the case before a jury), this Court is required to uphold the decision, even should the Court disagree with the decision. Blalock, 483 F.2d at 775.

Under this standard, the record contains substantial evidence to support the conclusion of the Commissioner that the Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time period. Therefore, it is recommended that the decision of the Commissioner be **affirmed**.

_____
Bristow Marchant
United States Magistrate Judge

Columbia, South Carolina

January  3,  2006

